IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CINDY BARKHURST,                          07-CV-426-BR

        Plaintiff,                   OPINION AND ORDER

v.

MIKE JOHANNS, Secretary of
the Department of Agriculture,

        Defendant.


**ELIZABETH McKANNA**
McKanna Bishop Joffe & Arms, LLP
1635 N.W. Johnson Street
Portland, OR 97209
(503) 226-6111

**MARY DRYOVAGE**
Law Offices of Mary Dryovage
600 Harrison Street, Suite 120
San Francisco, CA 94107
(415) 593-0095

      Attorneys for Plaintiff


1 - OPINION AND ORDER

**KARIN J. IMMERGUT**
United States Attorney
**BRITANNIA I. HOBBS**
**JAMES E. COX, JR.**
Assistant United States Attorneys
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
(503) 727-1117

   Attorneys for Defendant


**BROWN, Judge.**

  This matter comes before the Court on Defendant Mike
Johanns's Motion for Summary Judgment (#14).  For the reasons
that follow, the Court **GRANTS** Defendant's Motion.


## INTRODUCTION

  On March 23, 2007, Plaintiff Cindy Barkhurst filed a
Complaint in this Court in which she alleges claims for sex
discrimination, retaliation, hostile work environment, and
constructive discharge pursuant to Title VII of the Civil Rights
Act of 1964, 42 U.S.C. 2000e-5, *et seq*.

  On January 4, 2008, Defendant moved for summary judgment on
all of  Plaintiff's claims.  Although not a model of clarity, it
appears Defendant seeks summary judgment on the grounds that:

  (1) Plaintiff has not exhausted her administrative remedies
as to the alleged acts underlying her claims of sex
discrimination, retaliation, and hostile work environment, and,
therefore, this Court does not have subject-matter jurisdiction

2 - OPINION AND ORDER

over Plaintiff's claims that rely on those alleged acts;

(2) Plaintiff has not established a *prima facie* case of
discrimination, retaliation, or hostile work environment under
Title VII;

(3) and Plaintiff has not established a claim of
constructive discharge under Title VII.

In her Response to Defendant's Motion, Plaintiff did not
address the threshold issue of exhaustion as to her claims
brought under Title VII.  On March 20, 2008, the Court notified
the parties that the record was unclear as to the facts related
to the exhaustion issue and directed the parties to provide a
joint chronological statement of the relevant facts to include
the dates of each alleged act of discrimination, the specific
substance and dates of Plaintiff's informal contacts with Equal
Employment Opportunity Commission (EEOC) Counselors, the date of
any notice issued by the EEOC advising Plaintiff of her right to
file a formal complaint, the dates any formal complaints were
filed, and the dates of any final resolutions of those formal
complaints.  On March 25, 2008, the parties submitted their Joint
Response.

On March 26, 2008, the Court heard oral argument on the
exhaustion issue.  Because the record concerning the exhaustion
issue still was unclear, the Court directed the parties to file
an amended joint chronological statement of facts and allowed the

3 - OPINION AND ORDER

parties to file supplemental briefs.

On April 7, 2008, the parties filed a joint Supplemental Chronological Fact Statement.  On April 21, 2008, Plaintiff filed a Memorandum of Points and Authorities Regarding Exhaustion of Adminstrative Remedies.  On May 5, 2008, Defendant filed his Response to Plaintiff's Supplemental Brief.

On July 9, 2008, the Court issued an Order in which it found Plaintiff's Memorandum did not comply with the Court's instructions.  The Court ordered Plaintiff to show cause why the Court should not strike Plaintiff's Memorandum and proceed to adjudicate on the resulting record the portion of Defendant's Motion that challenges whether Plaintiff exhausted her administrative remedies before filing her Complaint.  In response to the Court's Show Cause Order, Plaintiff filed a Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment on July 25, 2000, that substantively addressed the exhaustion issue.  On August 28, 2008, Defendant filed its Second Response to Plaintiff's Brief Regarding Exhaustion.  The Court took the exhaustion issue under advisement on August 28, 2008.

After a thorough review of the record, the Court concludes that the record is sufficiently developed to resolve the issues of exhaustion and subject-matter jurisdiction over Plaintiff's Title VII claims; that the remaining substantive issues raised in Defendant's Motion for Summary Judgment, which have also been

4 - OPINION AND ORDER

fully briefed, are now ripe for resolution; and that additional oral argument would not be helpful.

## PROCEDURAL AND FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.

Plaintiff Cindy Barkhurst was employed by the United States Forest Service (USFS) primarily as a wildlife biologist from 1980 to 2003.  Defendant Mike Johanns is Secretary of the Department of Agriculture under which the USFS is organized.

In 1994 Forest Supervisor Don Ostby promoted Plaintiff to the position of Wildlife Program Manager (GS-12) of the Umpqua National Forest (the Forest) in Oregon on the recommendation of Terry Brumley, Plaintiff's supervisor.  As Wildlife Program Manager, Plaintiff was responsible for program operations regarding wildlife and threatened or endangered species and for conducting biological evaluations and certain species inventories.  She was expected to maintain contact with a wide range of professionals within USFS, other governmental agencies, and universities as well as to liaise with the media and the general public.

In 1995 several government agencies, including USFS, implemented procedures to streamline interagency consultations under the Endangered Species Act.  These procedures included the creation of teams of experts at several levels to work through

5 - OPINION AND ORDER

policy changes.  Plaintiff was assigned leader of the Level One
Team for the Forest.  Although Plaintiff alleges in her Complaint
that Brumley excessively criticized and scrutinized her
suggestions as leader of the Level One Team, Plaintiff did not
make any formal or informal complaints at the time.

On December 15, 1998, Brumley removed Plaintiff and Jeff
Dose, another team member, from the Level One Team.  They were
replaced by Dean Curtis and John Chatel, new employees who were
to be permanently dedicated to the team full-time.  In a letter
dated January 20, 1999, Brumley stated he removed Plaintiff from
the team so she could focus on her regular duties as Wildlife
Program Manager.  On March 1, 1999, Plaintiff contacted an EEOC
Counselor and made an informal complaint regarding her removal
from the Level One Team because she believed it was motivated by
discrimination based on her sex.  Although the EEOC Counselor
sent Plaintiff a letter informing her of her right to file a
formal complaint within 15 days of May 29, 1999, Plaintiff did
not do so.

On February 16, 1999, Brumley advised Plaintiff as to
supplemental standards that were to be used in her FY 1999 and
FY 2000 performance reviews.  In addition, Brumley solicited
feedback from Plaintiff's peers regarding her performance.  On
both reviews, Plaintiff received "successful" ratings from the
choices of "successful," "marginal," and "unacceptable."  The

6 - OPINION AND ORDER

FY 1999 and FY 2000 performance reviews became final on May 19, 1999, and  February 28, 2000, respectively.

On May 26, 1999, and July 13, 1999, Plaintiff alleges Brumley circumvented Plaintiff's authority by giving direct assignments to Plaintiff's subordinate, Terri Stone.  Brumley, however, does not recall giving Stone any special or conflicting assignments.

On August 2, 1999, and February 29, 2000, Plaintiff received anonymous interoffice envelopes that she considered harassing. The first contained soil, pine needles, and animal hair. Plaintiff did not open the second envelope, which officials removed for investigation.  Although the USFS Law Enforcement and Investigations Department concluded the conduct was potentially criminal, it also concluded the matter could not be referred to a prosecutor due to insufficient evidence and lack of suspects.

On June 15, 2000, Plaintiff contacted an EEOC Counselor regarding Plaintiff's performance reviews, Brumley's alleged circumvention of Plaintiff's authority by giving Stone assignments directly, and Plaintiff's receipt of the interoffice mail.  Although Plaintiff did not complain about the adequacy of the investigation into the interoffice mail issue, she did assert these incidents demonstrated that she had been discriminated against based on her sex and retaliated against for her prior EEOC activity.  On September 13, 2000, the EEOC Counselor sent

7 - OPINION AND ORDER

Plaintiff a letter informing her of her right to file a formal complaint within 15 days.  Plaintiff filed a formal complaint (010041) on October 5, 2000.

In late 2000, Plaintiff learned Brumley would be leaving his position as Natural Resources Staff Officer and that Ostby planned to divide the position into a 30-day and a 90-day temporary detail.

According to Plaintiff, Ostby would have been required to advertise a 120-day temporary detail competitively, but Ostby could assign someone to a shorter detail without advertising the opening.  Plaintiff asserts Ostby divided the detail to prevent Plaintiff from applying.  Although Plaintiff requested appointment to both details, Ostby denied her requests. According to Ostby's Declaration, he wanted Craig Tuss (GS-12) of the Department of Fish and Wildlife (USFWS) for the entire 120-day detail, but Tuss was only available for a limited time.  Ostby states he, therefore, created two shorter temporary details and appointed Tuss to the first temporary detail on December 2, 2000. On April 24, 2001, Ostby appointed Brenda Woodard, an employee with the Forest Supervisor's Office, to the second temporary detail.

On December 15, 2000, Plaintiff initiated contact with an EEOC Counselor regarding her nonassignment to the first temporary detail alleging she had been discriminated against based on her

8 - OPINION AND ORDER

sex and retaliated against for her prior EEOC activity.  The EEOC Counselor sent Plaintiff a notice on February 27, 2001, that she could file a formal complaint.  Plaintiff filed a formal complaint (010410) on March 15, 2001.

On April 24, 2001, Plaintiff initiated contact with an EEOC Counselor regarding her nonassignment to the second temporary detail alleging she had been discriminated against based on her sex and retaliated against for her prior EEOC activity.  The EEOC Counselor sent Plaintiff a notice on June 12, 2001, informing her that she could add the nonassignment to the second temporary detail to her earlier formal complaint.  Plaintiff did so on June 24, 2001.

Plaintiff also applied for the open permanent position of Natural Resources Officer along with 16 other applicants.  To assist in the selection, a panel was convened to recommend a candidate to Linda Goodman, the Regional Forester.  The panel, made up of both men and women, did not recommend Plaintiff as a candidate.  On August 1, 2001, Goodman selected Karla Bird, one of the panel's top choices, for the position.  The other applicants were notified mid-month that they were not selected.

On January 4, 2002, Plaintiff initiated contact with an EEOC Counselor regarding her nonselection for the permanent position alleging she was discriminated against based on her sex and retaliated against for her prior EEOC activity.  The EEOC gave

9 - OPINION AND ORDER

Plaintiff permission to amend her March 15, 2001, formal
complaint to add this new allegation, and she did so on April 8,
2002.

During budget meetings in March 2002, the Forest Executive
Team (ET) restructured the general budget, which resulted in the
reallocation of funds for several projects high-priority projects
within the Wildlife Program.  The new budget included
reallocation of $15,000 previously dedicated to a wetlands-
monitoring project overseen by Plaintiff.  Plaintiff was informed
of the ET's decision on March 4, 2002.  The reallocated funds
represented a small part of the budget managed by Plaintiff, and
the remainder of Plaintiff's projects remained intact.

On March 11, 2002, Plaintiff requested a one-year leave of
absence on the ground that she did not wish to return to work
until her EEOC claims were resolved.  On March 15, 2002, Bird
partially granted Plaintiff's leave-of-absence request:
Plaintiff could take one week of leave beginning March 18 and
additional short increments of leave as needed.  Bird denied the
balance of Plaintiff's request on the ground that Plaintiff's
responsibilities as Wildlife Program Manager required her
presence on the job.

On March 25, 2002, Plaintiff contacted an EEOC Counselor
about the loss of funding and the partial denial of her leave-of-
absence request alleging those actions were taken in retaliation

10 - OPINION AND ORDER

for her prior EEOC activity.  The EEOC Counselor notified Plaintiff on April 24, 2002, that she could file a formal complaint, which she did on May 11, 2002 (020552).

An EEOC Administrative Law Judge (ALJ) resolved Plaintiff's complaints by decision without a hearing on September 14, 2004. In the decision, the ALJ granted Plaintiff's motion to amend her complaint to include a claim for constructive discharge and granted USFS's motion for summary judgment as to each of Plaintiff's claims.  Defendant issued a final agency decision adopting the ALJ's decision on October 29, 2005.  Plaintiff filed a request for review with the Office of Federal Operations, EEOC, which issued a decision on December 21, 2006, advising Plaintiff that she had a right to file a civil action within 90 days of the receipt of the notice.

On March 23, 2007, Plaintiff filed her Complaint in this Court.  In Claim One, Plaintiff alleges Defendant unlawfully discriminated against her on the basis of sex and created a hostile work environment that led to Plaintiff's constructive discharge in violation of Title VII.  In Claim Two, Plaintiff alleges Defendant unlawfully retaliated against her for asserting her legally protected rights to be free of sex discrimination in the workplace.

As noted, Defendant filed a Motion for Summary Judgment on January 4, 2008, in which he seeks judgment against Plaintiff on

11 - OPINION AND ORDER

all of her claims.

## STANDARDS

Federal Rule of Civil Procedure 56© authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of a genuine issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact,

however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

**I.    Plaintiff has not exhausted her administrative remedies as to all of the incidents that form the basis of her Title VII claims, and, to that extent, the Court lacks subject-matter jurisdiction over Plaintiff's Title VII claims.**

To establish the Court has subject-matter jurisdiction over Plaintiff's Title VII claims, Plaintiff must prove she exhausted her administrative remedies before seeking adjudication in the district court. *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002). A plaintiff initially must file a complaint with the EEOC to give the agency an opportunity to investigate the charges. 42

13 - OPINION AND ORDER

U.S.C. § 2000e-5(b).  Such complaints must be filed within 180 days of the alleged unlawful conduct.  *Id.* § 2005e-5(e)(1).  In addition, federal employees must consult with an EEOC Counselor within 45 days of the alleged unlawful conduct "as a condition precedent to filing a formal charge." *Id.* at 1104 n.4.  *See also* 29 C.F.R. § 1614.105(a).  If the EEOC Counselor determines a complainant may file a formal complaint, the complainant must do so within 15 days of the receipt of notification from the EEOC Counselor.  29 C.F.R. §§ 1614.105(d), 1614.106(b).  If a claimant meets the 45 day and 15 day deadlines, the claimant will automatically meet the 180 day deadline for filing charges.  *See* § 1614.105.  Failure to comply with these requirements is "fatal" to a federal employee's Title VII claims.  *Lyons*, 307 F.3d at 1105.

Plaintiff alleges the following eight discrete acts by Defendant to support her claim of sex discrimination:  (1) On December 15, 1998, Defendant removed Plaintiff from the Level One Team; (2) Defendant held Plaintiff to different standards than her male coworkers on her performance reviews for FY 1999 (issued February 28, 2000) and FY 2000 (issued May 10, 1999); (3) Defendant circumvented Plaintiff's authority with respect to Plaintiff's subordinate, Terri Stone, by giving Stone assignments directly on May 26, 1999, and July 13, 1999; (4) Defendant did not adequately investigate Plaintiff's receipt of allegedly

harassing mail at work on August 2, 1999, and February 29, 2000;
(5) Defendant did not appoint Plaintiff to either of the
temporary details as Natural Resources Staff Officer for the
Forest; (6) Defendant did not select Plaintiff for the permanent
position of Natural Resources Staff Officer; (7) Defendant
reallocated funding for a wetlands-monitoring project supervised
by Plaintiff; and (8) Defendant partially denied Plaintiff's
request for a leave of absence.  Plaintiff also asserts seven of
these acts support her claim of retaliation.

   **A.   Removal from the Level One Team.**

   Plaintiff alleges Defendant discriminated against her on the
basis of her sex when Defendant removed Plaintiff from the Level
One Team.  Brumley, Plaintiff's supervisor, notified Plaintiff
that she was to be removed from the Level One Team on December
15, 1998.  Plaintiff first met with an EEOC Counselor on March 1,
1999, which is more than 45 days after the incident occurred.  In
addition, although an EEOC Counselor notified Plaintiff on May
29, 1999, that she could file a formal complaint, she did not do
so.

   On this record, the Court concludes Plaintiff did not
exhaust her administrative remedies in regard to her removal from
the Level One Team.  Accordingly, the Court does not have
subject-matter jurisdiction over Plaintiff's Title VII claims of
sex discrimination to the extent that they are based on this

15 - OPINION AND ORDER

incident.

**B.    Performance Reviews.**

Plaintiff alleges Defendant discriminated against her on the basis of her sex and retaliated against her because of her EEOC activity when Defendant used supplemental standards in its performance evaluations of Plaintiff, but not other employees, in FY 1999 and FY 2000 and negative peer feedback in its performance evaluation of Plaintiff in FY 2000.  The record reflects and Defendant does not dispute that Defendant used supplemental standards in its performance reviews of Plaintiff at Plaintiff's request.  On February 16, 1999, Brumley, who conducted Plaintiff's performance evaluations, set out the supplemental standards that Defendant intended to use in a memorandum to Plaintiff.  In addition, Plaintiff acknowledges in a memorandum to Brumley dated March 17, 2000, that she was provided with the allegedly negative peer feedback at the time of her FY 2000 performance review on February 28, 2000.

On May 10, 1999, Plaintiff advised Brumley that she believed the supplemental standards were biased and inappropriate.  Nevertheless, the FY 1999 and FY 2000 performance reviews of Plaintiff became final on May 19, 1999, and February 28, 2000.

Plaintiff first contacted an EEOC Counselor regarding the allegedly improper performance evaluations on June 15, 2000, more than 45 days after the last performance-evaluation date of

16 - OPINION AND ORDER

February 28, 2000.  Although Plaintiff asserts the FY 1999 performance review became final on June 2, 2000, rather than February 28, 2000, the record reflects Plaintiff was aware of the supplemental standards that were going to be used in her performance evaluations in late FY 1998, and she received the supplemental standards from Brumley on February 16, 1999.  In addition, she knew by March 17, 2000, about the allegedly negative peer feedback.  In these circumstances, the 45 days began to run at least by March 17, 2000, because the record reflects Plaintiff was aware of all the allegedly discriminatory conduct by that date.  *See* 42 U.S.C. § 2005e-5(e)(1).

On this record, the Court concludes Plaintiff did not exhaust her administrative remedies as to Defendant's allegedly improper conduct of her performance reviews.  Accordingly, the Court does not have subject-matter jurisdiction over Plaintiff's Title VII claims of sex discrimination and retaliation to the extent they are based on these incidents.

**C.    Circumvention of Plaintiff's Authority.**

Plaintiff alleges Defendant discriminated against her on the basis of her sex and retaliated against her because of her EEOC activity when Defendant circumvented Plaintiff's authority on May 26, 1999, and July 13, 1999, by giving her subordinate, Terri Stone, assignments directly.  Plaintiff first contacted an EEOC Counselor regarding these incidents on June 15, 2000, which is

17 - OPINION AND ORDER

more than 45 days after either meeting.

On this record, the Court concludes Plaintiff did not exhaust her administrative remedies as to Defendant's alleged circumvention of Plaintiff's authority.  Accordingly, the Court does not have subject-matter jurisdiction over Plaintiff's Title VII claims of sex discrimination and retaliation to the extent they are based on these incidents.

**D.    Investigation of Allegedly Harassing Mail.**

Plaintiff alleges Defendant discriminated against her on the basis of her sex and retaliated against her because of her EEOC activity when Defendant failed to investigate adequately Plaintiff's receipt of anonymous packages through interoffice mail on August 2, 1999, and February 29, 2000.

Plaintiff first contacted an EEOC Counselor regarding those incidents on June 15, 2000, more than 45 days after the receipt of both packages.  To support the timeliness of her informal contact with an EEOC Counselor, Plaintiff asserts she did not discover Defendant's investigation was inadequate until she was notified by Brumley in June 2000 that the investigation was closed.  The record reflects, however, that Plaintiff was displeased with the thoroughness of Defendant's investigation and the lack of Ostby's involvement almost from the beginning of the investigation.  In any event, Plaintiff alleges harassment in her EEOC complaint based on the receipt of the envelopes rather than

18 - OPINION AND ORDER

on a failure by Defendant to adequately investigate the incidents.

On this record, the Court concludes Plaintiff did not exhaust her administrative remedies as to Defendant's alleged failure to adequately investigate the interoffice mail issue. Accordingly, the Court does not have subject-matter jurisdiction over Plaintiff's Title VII claims of sex discrimination and retaliation to the extent they are based on these incidents.

**E.    Nonassignment to Temporary Details.**

Plaintiff alleges Defendant discriminated against her on the basis of her sex and retaliated against her because of her EEOC activity when Defendant failed to assign Plaintiff to either or both temporary detail positions as Natural Resources Staff Officer.

The record reflects Plaintiff learned about the first temporary detail assignment on December 2, 2000, and contacted an EEOC Counselor promptly on December 15, 2000, which is within the requisite 45 days.  The EEOC notified Plaintiff by letter dated February 27, 2001, that she could file a formal complaint, and she did so on March 15, 2001.  Although Plaintiff has not provided the Court with the actual date the notice was received by Plaintiff, "[a] document shall be deemed timely if it is postmarked before the expiration of the applicable filing period, or, in the absence of a legible postmark, if it is received by

19 - OPINION AND ORDER

mail within five days of the expiration of the applicable filing period." 29 C.F.R. § 1614.604(b). It appears, therefore, that Plaintiff timely filed her formal complaint with the EEOC. Moreover, Defendant conceded at oral argument that Plaintiff exhausted her administrative remedies as to the incidents underlying her Title VII claims based on nonassignment to the first temporary detail.

The record also reflects Plaintiff first learned about the second temporary-detail assignment on April 24, 2001; she reported it to an EEOC Counselor the same day; she was notified by the EEOC on June 12, 2001, that she could amend her previous formal complaint to include this issue; and she amended her formal complaint on June 24, 2001. It appears, therefore, that Plaintiff timely filed her formal complaint with the EEOC. Moreover, Defendant conceded at oral argument that Plaintiff exhausted her administrative remedies as to the incidents underlying her Title VII claims based on nonassignment to the second temporary detail.

Accordingly, the Court concludes Plaintiff exhausted her administrative remedies as to her claims based on the temporary details, and, therefore, the Court has subject-matter jurisdiction over Plaintiff's Title VII claims of sex

discrimination and retaliation to the extent they are based on

20 - OPINION AND ORDER

these incidents.

**F.    Nonassignment to a Permanent Position.**

Plaintiff alleges Defendant discriminated against her on the basis of her sex and retaliated against her because of her EEOC activity when Defendant failed to appoint her to the permanent position of Natural Resources Staff Officer after Brumley left. The announcement that Bird would fill the position was made on August 1, 2001.  Plaintiff first contacted an EEOC Counselor regarding this act on January 3, 2002, more than 45 days after the incident.

On this record, the Court concludes Plaintiff has not exhausted her administrative remedies as to her nonassignment to the permanent position, and, therefore, the Court does not have subject-matter jurisdiction over Plaintiff's Title VII claims of sex discrimination and retaliation to the extent they are based on this incident.

**G.    Reallocation of Funding.**

Plaintiff alleges Defendant retaliated against her because of her EEOC activity when Defendant reallocated $15,000 that was dedicated to a wetlands-monitoring project overseen by Plaintiff.

The record reflects Defendant notified Plaintiff about the budget decision no later than March 4, 2002, and Plaintiff contacted an EEOC Counselor regarding the incident on March 25, 2002, which is within the 45-day period.  The EEOC notified

21 - OPINION AND ORDER

Plaintiff on April 24, 2002, that she could file a formal
complaint, and she did so on May 11, 2002.  Although the parties
have not provided the Court with the actual date the notice was
received by Plaintiff, Defendant conceded at oral argument and it
is reasonable to infer based on these facts and 29 C.F.R.
§ 1614.604(b) that Plaintiff timely filed her formal complaint.

Accordingly, the Court concludes Plaintiff exhausted her
administrative remedies as to the reallocation of the funding for
the wetlands-monitoring project overseen by Plaintiff, and,
therefore, the Court has subject-matter jurisdiction over
Plaintiff's Title VII claims of sex discrimination and
retaliation to the extent they are based on this incident.

**H.    Partial Denial of Plaintiff's Leave-of-Absence Request.**

Plaintiff alleges Defendant retaliated against her because
of her EEOC activity when Defendant partially denied Plaintiff's
request for a leave of absence on March 15, 2002.

The record reflects Plaintiff contacted an EEOC Counselor on
March 25, 2002, regarding the incident, which was within the
45-day period.  The EEOC notified Plaintiff on
April 24, 2002, that she could file a formal complaint, and she
did so on May 11, 2002.  Although the parties have not provided
the Court with the actual date the notice was received by
Plaintiff, Defendant conceded at oral argument and it is
reasonable to infer based on these facts and 29 C.F.R.

§ 1614.604(b) that Plaintiff timely filed her formal complaint.

Accordingly, the Court concludes Plaintiff exhausted her administrative remedies as to the partial denial of her leave-of-absence request, and, therefore, the Court has subject-matter jurisdiction over Plaintiff's Title VII claims of sex discrimination and retaliation to the extent they are based on this incident.

In summary, the Court concludes Plaintiff did not exhaust her administrative remedies as to the following incidents: (1) removal from the Level One Team, (2) her FY 1999 and FY 2000 performance reviews, (3) the circumvention of her authority, (4) the allegedly inadequate investigation of harrassing interoffice mail, and (5) nonassignment to the permanent position of Natural Resources Staff Officer. The Court, therefore, concludes it does not have subject-matter jurisdiction over Plaintiff's Title VII claims of sex discrimination and retaliation to the extent they are based on those incidents. Accordingly, the Court grants Defendant's Motion as to the parts of Plaintiff's Title VII claims based on those incidents.

The Court also concludes Plaintiff has exhausted her administrative remedies as to the following incidents: (1) nonassignment to the temporary details, (2) reallocation of the wetlands-monitoring funds, and (3) denial of her leave-of-absence request. The Court, therefore, has subject-matter

jurisdiction over Plaintiff's Title VII claims of sex
discrimination and retaliation to the extent they are based on
those incidents.

**II.  Plaintiff has not shown there is any triable issue of
      material fact as to her claims of sex discrimination and
      retaliation.**

Plaintiff asserts there is a triable issue of fact as to
whether Defendant discriminated against her based on her sex by
not assigning her to either temporary detail as Natural Resources
Staff Officer.  Plaintiff also asserts there is a triable issue
of fact as to whether Defendant retaliated against Plaintiff for
her prior EEOC activity by not assigning her to either temporary
detail, reallocating the funding for wetlands-monitoring overseen
by Plaintiff, and partially denying Plaintiff's leave-of-absence
request.

**A.    Sex Discrimination.**

According to Defendant, Plaintiff has not established a
*prima facie* case of sex discrimination under Title VII based on
her nonassignment to the temporary details as Natural Resource
Staff Officer.

"Under Title VII, an individual suffers disparate treatment
'when he or she is singled out and treated less favorably than
others similarly situated on account of [gender].'"  *McGinest v.
GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004)(quoting
*Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir.

24 - OPINION AND ORDER

1988)).  "Disparate treatment claims must proceed along the lines
of the praxis laid out by the Supreme Court in *McDonnell Douglas
Corp. v. Green*, 411 U.S. 792 (1973), and its progeny."  *Bodett v.
Coxcom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004).  The *McDonnell
Douglas* analysis requires a plaintiff first to establish a *prima
facie* case of discrimination.  Although

> [the] specific method for appropriately
> establishing a prima *facie case* will vary
> depending on differing factual situations. . .
> [i]n general, a plaintiff must present evidence of
> actions taken by the employer from which one can
> infer, if such actions remain unexplained, that it
> is more likely than not that such action was based
> upon race or another impermissible criterion.

*Id.* (quotations omitted).  "'The requisite degree of proof
necessary to establish a *prima facie* case for Title VII . . .
claims on summary judgment is minimal and does not even need to
rise to the level of a preponderance of the evidence.'"  *Davis v.
Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)(quoting
*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

To establish a *prima facie* case of sex discrimination under
Title VII, Plaintiff must show "(1) she belongs to a protected
class, (2) she was qualified for her position, (3) she was
subject to an adverse employment action, and (4) similarly
situated individuals outside her protected class were treated
more favorably."  *Davis v. Team Elec.*, 520 F.3d 1080, 1089 (2007)
(citing *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123
(2000)).  Steps three and four are, in effect, an inquiry as to

25 – OPINION AND ORDER

whether the employer's action were based on discriminatory
intent. *McGinest,* 360 F.3d at 1123.

When a plaintiff makes a *prima facie* case of discrimination,
the burden shifts to the defendant "to produce some evidence
demonstrating a legitimate, nondiscriminatory reason for the
[adverse employment action]." *Bodett*, 366 F.3d at 743 (citing
*McDonnell Douglas*, 411 U.S. at 802). If a defendant produces
sufficient evidence of a legitimate, nondiscriminatory reason,
"any presumption that the defendant discriminated 'drops from the
case,' and the plaintiff must then show by a preponderance of the
evidence that the defendant's alleged reason for termination was
merely a pretext for discrimination." *Id*. (quoting *St. Mary's
Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993)). "The burden
of persuasion, as opposed to production, however, remains with
the plaintiff at all times." *Id*.

### 1.  First Temporary Detail.

The parties agree Plaintiff has satisfied the first
three elements for establishing a *prima facie* case as to the
first temporary detail. Defendant, however, contends Plaintiff
has not satisfied the fourth element because she has failed to
show that Ostby's decision not to assign Plaintiff to the first
temporary detail was motivated by Plaintiff's sex; *i.e.*,
Plaintiff has not offered any evidence that males similarly
situated were treated more favorably than her.

26 - OPINION AND ORDER

Here Ostby assigned Woodard, a woman, to the first detail. Thus, Plaintiff cannot establish a *prima facie* case of discrimination based on her sex as to the first temporary detail.

### 2. Second Temporary Detail.

The parties also agree Plaintiff has satisfied the first three elements for establishing a *prima facie* case with respect to the second temporary detail, but Defendant again contends Plaintiff has not satisfied the fourth element. Because Ostby assigned Tuss, a man, to the second temporary detail, Plaintiff has shown that a similarly situated male individual was treated more favorably. Thus, Plaintiff has satisfied the minimal requirements necessary to establish a *prima facie* case of sex discrimination as to the second temporary detail.

Under *McDonnell Douglas*, the burden shifts to Defendant to provide legitimate, nondiscriminatory reasons for its actions. *Bodett*, 366 F.3d at 743. Defendant contends Ostby divided the 120-day detail into two temporary details primarily because Tuss was Ostby's top candidate for the position and Defendant believed it would be mutually beneficial to have a professional from USFWS to serve in the detail because USFWS reviews USFS programs. In addition, Ostby stated he was sensitive to the potential problems that could arise if he appointed someone to the temporary detail who would be a candidate for the permanent position; *i.e.*, he thought that person would have an advantage in obtaining the

27 - OPINION AND ORDER

permanent position over other candidates who did not serve in

either of the temporary details, and he did not want to create

such an advantage.  Ostby, therefore, purposefully assigned the

two temporary details to individuals who were not interested in

the permanent position.  Finally, the fact that Defendant

assigned a female to the first temporary detail and later

appointed a female to the permanent position of Natural Resources

Staff Officer also supports Defendant's position that its

selection for the second temporary detail was not based on sex

discrimination.  In these circumstances, the Court concludes

Defendant has provided sufficient evidence of a legitimate,

nondiscriminatory reason for not assigning Plaintiff to the

second temporary detail.

        Under *McDonnell Douglas*, the burden shifts back to

Plaintiff to show by a preponderance of the evidence that

Defendant's reasons are pretextual and that Defendant's true

motivation was sex discrimination.  Although Plaintiff argues

Ostby divided the position into two temporary details so that he

would not have to advertise the position competitively and

thereby could prevent Plaintiff from applying for and obtaining

the job, Plaintiff does not offer any evidence from which a jury

could so find.

    Because Plaintiff has not met her burden under *McDonnell*

*Douglas* to show a triable issue of material fact as to whether

her nonassignment to the temporary details was motivated by sex discrimination, the Court grants Defendant's Motion as to Plaintiff's sex-discrimination claim.

**B.    Retaliation.**

Defendant contends Plaintiff has not established a *prima facie* case of retaliation under Title VII based on her EEOC activity related to her complaints about removal from the Level One Team, nonassignment to the temporary details, Defendant's reallocation of wetlands-monitoring funds, and Defendant's partial denial of Plaintiff's leave-of-absence request.

"To make out a *prima facie* case of retaliation, [a plaintiff] must establish 'that she acted to protect her Title VII rights, that an adverse employment action was thereafter taken against her, and that a causal link existed between those two events.'"  *Kortan v. Cal. Youth Auth*., 217 F.3d 1104, 1112 (9th Cir. 2000)(quoting *Steiner v. Showboat Operating Co*., 25 F.3d 1459, 1465 (9th Cir. 1994)).

**1.    Nonassignment to Temporary Details.**

Plaintiff asserts Defendant retaliated against her for her March 1, 1999, and June 15, 2000, EEOC activity by not assigning her to either temporary detail.  Again, the parties agree Plaintiff has satisfied all but one of the elements required to establish a *prima facie* case of retaliation for her EEOC activity on March 1, 1999, and June 15, 2000.

29 - OPINION AND ORDER

Defendant, nonetheless, seeks summary judgment on the basis that Plaintiff has failed to satisfy the third element by showing a causal link between her EEOC activity and Defendant's December 2, 2000, assignment of the temporary details to others. Specifically, Defendant contends the length of the interval between Plaintiff's March 1, 1999, EEOC activity and Defendant's December 2, 2000, assignment of the temporary details is insufficient to support an inference that they were related.

The Court notes close temporal proximity between an incident and an adverse employment action taken against an employee "merely provides an evidentiary basis from which an inference of [retaliation] can be drawn." *Porter v. Cal. Dep't of Corrections*, 419 F.3d 885, 895 (9th Cir. 2005). On the other hand, "the absence of immediacy between the cause and effect does not disprove causation." *Id.* In other words, the lack of temporal proximity between Plaintiff's March 1, 1999, EEOC activity and Defendant's December 2, 2000, assignment of the temporary details is insufficient to establish the events were unrelated.

The only evidence Plaintiff has provided to show a causal link between her March 1, 1999, and June 15, 2000, EEOC activity and the nonassignment of the temporary details is that Ostby, who appointed employees to the temporary details, knew about Plaintiff's prior EEOC activity. Such knowledge standing

30 - OPINION AND ORDER

alone is insufficient to infer discriminatory intent, especially, where, as here, Plaintiff received positive performance evaluations during this period.  Moreover, Plaintiff does not identify any specific actions or events that could give rise to such an inference in light of such knowledge.  *See Porter*, 419 F.3d at 895 (evidence of specific acts and remarks allowed inference of discriminatory intent).

On this record, the Court concludes Plaintiff has not made a *prima facie* case that Defendant retaliated against Plaintiff for her EEOC activity when Defendant decided not to assign Plaintiff to the temporary details.

### 2.    Reallocation of Wetlands-Monitoring Funds.

Defendant asserts Plaintiff has not established a *prima facie* case under Title VII as to her claim for retaliation based on the reallocation of wetlands-monitoring funds because that act is not an "adverse employment decision," which is required to satisfy the second element necessary to establish a *prima facie* case.  An "adverse employment decision" is "one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'"  *Davis*, 520 F.3d at 1089 (quoting *Chuang*, 225 F.3d at 1126).

Plaintiff alleges she planned to use the funds in question for the purpose of hiring temporary staff to conduct wetlands monitoring.  The ET, however, advised Plaintiff that

there were higher priority projects in her program, and, therefore, the funds at issue were reallocated to other projects within her program.  Thus, the reallocation of funds did not reduce Plaintiff's program budget, affect her compensation, make her duties more burdensome, increase her responsibilities, or change the terms of her employment.

On this record, the Court concludes Plaintiff has not established a *prima facie* case of retaliation based on the reallocation of certain funds from one project to other projects in her program because Defendant's reallocation of funds was not an adverse employment action.

### 3.    Partial Denial of Requested Leave of Absence.

Defendant asserts Plaintiff has not established a *prima facie* case under Title VII as to her claim of retaliation based on the partial denial of her requested leave.  The Court notes Bird's denial of Plaintiff's leave did not affect Plaintiff's compensation nor the terms, conditions, or privileges of her employment.  Even if the partial denial of Plaintiff's leave-of-absence request could be considered an adverse employment action, however, Plaintiff has not offered any evidence of discriminatory intent other than the fact that Bird was aware of Plaintiff's EEOC activity.  On the contrary, Bird provided strong reasons for not granting Plaintiff a year-long leave of absence and indicated Defendant would accommodate Plaintiff as necessary:  for example,

Bird advised Plaintiff that her responsibilities and duties as Wildlife Program Manager were such that she was needed at work, but she could take one week off immediately and more time as needed.  In addition, Bird advised Plaintiff that USFS employees are generally not granted such leave as a matter of right.

On this record, the Court concludes Plaintiff has not satisfied the elements required to establish a *prima facie* case of retaliation based on the partial denial of her requested leave of absence.

In summary, the Court concludes that Plaintiff has not established a *prima facie* case of retaliation as to any of her complaints of discrimination.  Accordingly, the Court grants Defendant's Motion as to Plaintiff's retaliation claim.

**III. Alleged Hostile Work Environment.**

Plaintiff alleges Defendant subjected her to a hostile work environment in violation of Title VII.  It is unclear whether Plaintiff is attempting to establish that Defendant created a hostile work environment based on all of the alleged incidents underlying Plaintiff's claims or only the following time-barred incidents specifically named by Plaintiff:  removal from the Level One Team, the FY 1999 and FY 2000 performance reviews, the alleged circumvention of Plaintiff's authority, and the allegedly inadequate investigation of the harassing packages.  The Court, nevertheless, will assume Plaintiff is attempting to establish

her hostile work environment claim based on all eight of the incidents.  In any event, Defendant argues Plaintiff's hostile work environment claim is time-barred.

In order for her hostile work environment claim to survive summary judgment, Plaintiff must establish a genuine issue of material fact exists as to whether Defendant's conduct "was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter*, 419 F.3d at 895. *See also McGinest*, 360 F.3d at 1113.  Plaintiff is limited, however, in resurrecting claims (*i.e.,* to include the alleged incidents underlying those claims) that are otherwise time-barred by alleging a claim of hostile work environment.  In *National Railroad Passenger Corporation v. Morgan*, the Supreme Court held claims based on a hostile work environment "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  536 U.S. 101, 127 (2002).  "[T]o determine whether all of these events constitute 'one unlawful employment practice,' . . . [the Court] considers whether they were 'sufficiently severe or pervasive,' and whether the earlier and later events amounted to 'the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers.'" *Porter,* 419 F.3d at 895 (quoting *Morgan*, 536 U.S. at 116-118).

34 - OPINION AND ORDER

Here the only alleged incidents that are not time-barred are those incidents for which Plaintiff exhausted her administrative remedies:  nonassignment to the temporary details, the reallocation of funding for wetlands monitoring, and the denial of Plaintiff's leave-of-absence request.  The Court has already found Plaintiff failed to establish a *prima facie* case that Defendant engaged in the unlawful employment practices of sex discrimination and retaliation based on these incidents.  The Court also concluded the remaining incidents underlying Plaintiff's claims are not actionable because Plaintiff failed to exhaust her administrative remedies, and, therefore, they are time-barred.  Thus, the Court cannot on this record resurrect those claims under *Morgan* to support Plaintiff's hostile work environment claim.

Accordingly, the Court concludes Plaintiff has not established any triable issues as to her claim for hostile work environment.  The Court, therefore, grants Defendant's Motion as to this claim.

**IV.  Constructive Discharge.**

According to Defendant, Defendant is entitled to summary judgment on Plaintiff's constructive discharge claim because Plaintiff has not shown any triable issues of fact as to an intolerable discriminatory working environment based on sex.  The Court agrees.

35 - OPINION AND ORDER

To defeat summary judgment on a constructive discharge claim based on sex discrimination under Title VII, Plaintiff "must show a triable issue of fact as to whether 'a reasonable person in [her] position would have felt forced to quit because of intolerable and discriminatory working conditions.'" *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1144-45 (9th Cir. 2001)(quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1989)).

> [C]onstructive discharge "occurs when the working conditions deteriorate, *as a result of discrimination*, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer."

*Poland v. Chertoff*, 494 F.3d 1174, 1184-85 (9th Cir. 2007)(emphasis added).

Plaintiff's claim for constructive discharge fails as a matter of law because the Court has already concluded Plaintiff has not triable issues of discrimination based on sex.

Accordingly, the Court grants Defendant's Motion as to Plaintiff's constructive-discharge claim.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (#14). Accordingly, the Court **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 3rd day of November, 2008.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge